UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| POLAR-MOHR MASCHINENVERTRIEBSGESELLSCHAFT GMBH, CO. KG,,<br><br>Plaintiff,<br><br>v.<br><br>ZURICH AMERICAN INSURANCE COMPANY,<br><br>Defendant. | Case No. 17-cv-01804-WHO<br><br>**ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

Plaintiff Polar-Mohr Maschinenvertriebsgesellschaft GMBH, Co. KG ("Polar-Mohr") brings this action against defendant Zurich American Insurance Co. ("Zurich") for a determination whether Zurich's insurance policy required it to pay the entire amount of the settlement of a wrongful death case or simply a pro rata share. The parties dispute whether it matters if I apply California or New York law to answer that question. I conclude that, applying either state's laws, Zurich is obligated to pay all sums due. I also find that it must pay the defense costs incurred by Polar-Mohr and interest at 7% on the amounts paid in Euros, not dollars. As discussed below, I GRANT Polar-Mohr's motion for summary judgment and DENY Zurich's motion.

**BACKGROUND**

**I.   FACTUAL BACKGROUND**

**A.  Polar-Mohr's Business History**

Polar-Mohr is based in Hofheim, Germany and distributes commercial paper cutting machines and parts manufactured by its sister company, Adolf Mohr Maschinenfabrik KG ("Adolf Mohr"). Declaration of Henry Sabel ISO Mot. for Summary Judgment("Sabel Decl.") ¶ 2, 4 (Dkt. No. 42). Until July 15, 1972, Gane Brothers & Lane had exclusive distribution rights for Adolf

Mohr machines in the U.S. *Id.* ¶ 9-10, Ex. A, 1954 Agency Contract between Adolf Mohr and Gane Brothers & Lane (Dkt. No. 42-1). In 1971, those rights transferred to Heidelberg Eastern, Inc. *Id.* ¶ 10. After Polar-Mohr was founded in 1972, all paper cutters and associated parts produced by Adolf Mohr were sold to Polar-Mohr, which then sold the paper cutters and parts exclusively to Heidelberg Eastern in the United States until 1990. *Id.* ¶ 10. From its founding, all replacement parts for Polar-Mohr cutters originally sold through Gane Brothers were sold by Polar-Mohr exclusively to Heidelberg Eastern, and from 1990 to 1993 to both Heidelberg Eastern and Heidelberg West. *Id*. ¶¶ 4, 10, 13.

### B. The Huwe Lawsuit

On December 10, 2014, Roger and Oliver Huwe filed a lawsuit against a number of defendants, including Polar-Mohr, in the Superior Court of California, County of San Francisco, alleging that their father, Walter Huwe, had died from mesothelioma due to exposure to asbestos and/or asbestos-containing products from 1964 to 1999 during his employment as a service technician for Polar-Mohr machines. *See* Compendium of Exhibits ISO Zurich American's Mot. for Partial Summary Judgment ("Compendium"), Ex. 1, *Huwe v. Polar-Mohr* Complaint (Dkt. No. 37-1). The decedent initially worked for Gane Brothers and then other companies, including Heidelberg companies. *See, e.g*., Decl. of Ethan A. Miller ISO Polar-Mohr Maschinenvertriebsgesellschaft GMBH & Co. KG's Motion for Summary Judgment ("Miller Decl."), Ex. B, Roger Huwe Depo., at 87:2-11, 89:22-90:1 (Dkt. No. 43-2). He was diagnosed with mesothelioma on or around December 2013 and died on July 15, 2014. *Huwe v. Polar-Mohr* Complaint, Ex. B., Preliminary Fact Sheet (Dkt. No. 37-1).

Polar-Mohr tendered the Huwe lawsuit to Zurich in October 2015. Miller Decl. ¶ 10. Zurich had a copy of the primary policy covering Polar-Mohr by December 2015. Decl. of Dennis M. Cusack ISO Polar-Mohr Maschinenvertriebsgesellschaft GMBH & Co. KG's Motion for Summary Judgment ("Cusack Decl."), Ex. F at ZUR00016-18 (Dkt. No. 41-7). And by April 2016, Zurich was certain that the Huwe lawsuit encompassed claims triggering the additional insured endorsements due to Polar-Mohr's sales of cutters to Heidelberg Eastern and Gane Brothers. *See id.*, Ex. J, at 6; Ex. F at ZUR00015-16. In February 2017, six weeks before trial,

2

1 Zurich agreed to defend Polar-Mohr. Miller Decl. ¶ 13.

### C. Zurich's Primary Policy

Zurich issued a policy to Heidelberg Eastern with effective dates of July 1, 1984 to July 1, 1985, providing "Completed Operations and Products Liability Insurance." Cusack Decl., Ex. A, Zurich Policy (Dkt. No. 41-2). The policy provides $1 million in limits for bodily injury claims. *Id.* at ZUR002023. Zurich agreed to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages" that are a result of "bodily injury. . . caused by an occurrence." *Id.* at ZUR002030. The policy defines "bodily injury" as "bodily injury, sickness or disease sustained by any person that occurs during the policy period, including death at any time resulting therefrom." *Id.* at ZUR002026. Zurich also owes the policyholder a duty to defend, with defense costs covered in addition to the policy's limits. *Id.* at ZUR002027 (noting that supplementary payments include costs paid by Zurich to defend suit), ZUR002030 (providing for a duty to defend). Endorsement No. 2 of the policy is a named insured endorsement that adds Polar-Mohr, Adolf Mohr, and related companies as additional "Named Insureds" for sales by them to Heidelberg Eastern, Inc. *Id.* at ZUR002035. And Endorsement No. 3 extends coverage to Polar-Mohr for liability arising out of an agreement between it and Gane Brothers and Lane Inc. *Id.* at ZUR002036.

## II. PROCEDURAL BACKGROUND

On March 6, 2017, Polar-Mohr filed a lawsuit against Zurich in the Superior Court of California, County of San Francisco, alleging six causes of action. Dkt. No. 1-1. Polar-Mohr asserts breach of contract and breach of implied covenant of good faith and fair dealing claims and seeks declarations that (1) Zurich's duty to indemnify Polar-Mohr includes all sums that Polar-Mohr is obligated to pay as to Walter Huwe's bodily injury, (2) Zurich's duty to defend encompasses all costs to defend Polar-Mohr in the Huwe lawsuit, (3) Zurich is not entitled to claim the benefits of California Civil Code Section 2860 as a result of the breach of its duty to defend; and (4) Zurich is not entitled to challenge the reasonableness and necessity of attorneys' fees and costs incurred to defend the Huwe lawsuit, and Polar-Mohr is entitled to presumption that such defense costs were reasonable and necessary. Zurich removed the case to the United States

1 District Court for the Northern District of California on March 31, 2017. Dkt. No. 1. The parties

2 now both move for summary judgment. Dkt. Nos. 34, 41.

**LEGAL STANDARD**

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id.* The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 257 (1986).

On summary judgment, the Court draws all reasonable factual inferences in favor of the non-movant. *Id.* at 255. In deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

**I.     SETTLEMENT AMOUNT**

Zurich argues that, applying California's choice of law rules, New York law applies to the allocation of the settlement payment in the Huwe lawsuit, and that under New York law the "pro rata" method of allocation applies to the settlement amount. Polar-Mohr asserts that, because there is no material conflict between New York and California law as to contract interpretation, it is unnecessary to conduct a choice of law analysis. Polar-Mohr also claims that the application of either New York or California law garners the same results, that the "all sums" method of allocation applies.

4

### A. Applicable State Law

Relying on *Consolidated Edison Co. v. Allstate Insurance Co.*, 98 N.Y.2d 208 (2002), Zurich contends that there is a conflict between New York law and California law regarding indemnity allocation in long-tail asbestos cases. Zurich argues that *Consolidated Edison* establishes that in situations where there was lengthy exposure to asbestos eventually resulting in death, the indemnity allocation to an insurer is "pro rata," meaning its liability is limited to that portion of the injury that actually or is assumed to have occurred during its policy period. Polar-Mohr cites a more recent New York Court of Appeal ruling, *Matter of Viking Pump, Inc.*, 27 N.Y.3d 244, 261-64 (2016), to dispute Zurich's reading of *Consolidated Edison*.

In *Consolidated Edison*, the court examined how loss related to environmental damage that spanned many years and many successive insurance policies should be allocated. 98 N.Y.2d at 222-25. In relevant part, the policy provided that the insurer was "to indemnify the insured for *all sums* which the insured shall be obligated to pay . . . caused by or arising out of each occurrence." *Id.* at 222 (emphasis in original). The policy also stated that the policy "applies on to 'occurrences' . . . happening *during the policy period*." *Id.* (emphasis in original). Seizing on the phrase "during the policy period," the court found that, given that the policies in question only provided for indemnification for liability incurred during the policy period, and not liability incurred outside that period, pro rata allocation was the more appropriate method of allocation. *Id.* at 224.

*Viking Pump*, however, emphasizes that *Consolidated Edison* should not be read as New York "adopt[ing] a strict rule mandating either pro rata or all sums allocation because insurance contracts, like other agreements, should 'be enforced as written.' " 27 N.Y.3d. at 257. Having established this principle, the New York Court of Appeal determined whether the presence of a non-cumulation clause or a non-cumulation and prior insurance provision mandates all sums allocation as opposed to a pro rata allocation. *Id.* at 259-64. Based on the language of the policy and the fact that pro rata allocation was inconsistent with non-cumulation and non-cumulation/ prior insurance provisions, the court held that all sums allocation was appropriate. *Id.* at 264.

*Viking Pump* clarifies that the New York Court of Appeal did not intend to mandate pro

1 rata allocation in situations where lengthy exposure to an injury gives rise to liability. Rather, just
2 as in California, New York law mandates that, in determining allocation, courts "rely on [] general
3 principles of contract interpretation." *Id.* at 257; *see also State v. Cont'l Ins. Co.*, 55 Cal. 4th 186,
4 200 (2009) (noting that courts must give meaning to the language of the insurance policy
5 regarding appropriate allocation method).

Accordingly, there is no conflict of law between New York and California regarding allocation; the laws are identical. In each state, the courts must apply the laws of contract interpretation to give effect to the language of the insurance policy. Given this lack of conflict, I can consider both in determining the appropriate method of allocation. *See Gitano Group, Inc. v. Kemper Group*, 26 Cal. App. 4th 49, 57 (1994) ("[T]he court correctly determined that it could apply both California and New York law-California law because there is no conflict, and New York law because normally we are not precluded from considering the laws of sister states.").

### B. Method of Allocation

Zurich argues that the definition of "bodily injury" in the policy necessitates pro rata allocation because, by the express language, Zurich is only responsible for liabilities arising out of bodily injuries that occurred during the policy period. Polar-Mohr responds that because the definition of "bodily injury" acknowledges the policy's continuing coverage for bodily injury claims, it is inconsistent with pro rata allocation. Polar-Mohr also claims that the policy's "other insurance" clause is inconsistent with pro rata allocation, mandating the use of "all sums" allocation.

The Zurich policy defines "bodily injury" as "bodily injury, sickness or disease sustained by any person which occurs during the policy period, *including death at any time resulting therefrom.*" Cusack Decl., Ex. A at ZUR002026 (emphasis added). Citing *New England Insulation Co. v. Liberty Mutual Ins. Co.*, 83 Mass. App. Ct. 631, 637 (2013), Zurich argues that the phrase "including death at any time resulting therefrom" does not signify that Zurich will provide coverage for bodily injuries that occur outside of the policy period but rather acknowledges that the policy will cover consequential damages, even those taking place after the policy period. In Zurich's view, this language does not mandate "all sums" allocation.

6

If I was applying Massachusetts law, I might agree. But the authority in New York and California contradicts the holding of the Massachusetts court. *See Viking Pump*, 27 N.Y.3d at 255; *see also Cannon Elc., Inc. v. ACE Property & Casualty Co.,* No. BC 290354, at 39-40 (Los Angeles Superior Court, August 17, 2017) (noting that phrase "including death at any time resulting therefrom" expressly promises continuing coverage). The definition of "bodily injury" in the Zurich policy contemplates and promises indemnification to damages that arise outside of the policy period.

This is precisely the type of language that the court in *Viking Pump* found inconsistent with the pro rata method of allocation. 27 N.Y.3d at 258. Courts in California have reached the same conclusion in light of language that contemplates liability beyond the policy period. *See, e.g.*, *Cont'l Ins. Co.*, 55 Cal.4th at 199 ("Although some states have concluded . . . that pro rata coverage would be more fair and equitable when compared to all sums allocation, we are constrained by the language of the applicable policies"); *see also Aerojet-General Corp. v. Transport Indem. Co.*, 17 Cal. 4th 38, 56-57 (noting that duty to indemnify "extends to all specified harm caused by an included occurrence, even if some such harm results beyond the policy period"). Zurich's promise to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages" that are a result of "bodily injury. . .which occurs during the policy period, including death at any time resulting therefrom" necessitates "all sums" allocation.[1] Accordingly, I grant Polar-Mohr's motion for summary judgment on its first, third, and fourth causes of action and deny Zurich's motion.[2]

## II. DEFENSE COSTS

Having established that Zurich's policy requires an "all sums" allocation of the settlement payment from the Huwe lawsuit, Polar-Mohr also seeks declaratory relief as to its fifth and sixth causes of action, requesting that I declare that (1) Zurich is not entitled to claim the benefits of

---

[1] Given that the definition of "bodily language" mandates "all sums" allocation, I do not address whether the "other insurance" provisions of the policy also exclude pro rata allocation.

[2] The amount of the Huwe lawsuit settlement is within the limits of the Zurich primary policy. Accordingly, the Polar-Mohr's motion to amend (Dkt. No. 45) is DENIED as moot.

7

California Civil Code Section 2860, specifically the defense counsel rate limitations, and (2) the defense costs are presumptively reasonable. Zurich concedes that Section 2860 rate limitation does not apply but disputes that Polar-Mohr is entitled to a presumption of reasonableness concerning the defense costs.

Zurich concedes that it breached its duty to defend Polar-Mohr. Instead, it argues that where an insurer has breached its duty to defend, the insured still carries the burden of proving by a preponderance of the evidence the existence, amount, reasonableness, and necessity of defense costs. *See Aerojet-General Corp.*, 17 Cal. 4th at 64. Zurich also contends that whether fees were both reasonable and necessary is a question of fact not suitable for summary judgment. I do not find this argument persuasive.

In cases in which the insurer has breached its duty to defend, the insured carries the burden of proving the existence and amount of defense costs, which are presumed to be reasonable and necessary. *Id.* The insurer must carry the burden of proving that the costs are "in fact unreasonable or unnecessary." *Id.* This means that Polar-Mohr's costs are presumptively reasonable and necessary, and Zurich must put forth evidence that demonstrates that they are not reasonable or necessary.

Zurich fails to carry its burden. It offers no evidence of the reasonableness or necessity of the defense costs. Instead, it objects to invoices provided by Polar-Mohr that contain German entries with no authenticated translation. Dkt. No. 50. This objection is silly. Zurich has been in possession of the invoices since October 2017 and could easily have had the invoices translated. Cusack Decl. ¶ 4. Polar-Mohr's burden is to prove the existence and amount of the defense costs. Even without an authenticated translation, the invoices, as provided, allow Polar-Mohr to carry this burden. And in this case, Polar-Mohr provided (unauthenticated) translations to Zurich, which were sufficient to allow Zurich to pursue evidence establishing (if it could) that the costs were unreasonable or unnecessary.

Zurich also argues that its duty to defend was not triggered until April 2016, when it received documentation that Heidelberg Eastern was the exclusive distributor of Polar-Mohr cutters from 1971-1990, thus triggering endorsement number 2 in the primary policy. In Zurich's

1    view, because its duty to defend may not date back to October 2015, the amounts of fees are not
2    susceptible to resolution on summary judgment.

The duty to defend is triggered when the insured "shows that the underlying claim *may* fall within policy coverage; the insurer must prove that it cannot." *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 300 (1993). At the time of tender in October 2015, Zurich possessed information that Walter Huwe was exposed to asbestos in equipment sold by Polar-Mohr, who was an additional insured for sales to Heidelberg Eastern and Gane Brothers & Lane during the policy period. These facts alone demonstrate the possibility that the Zurich policy covered the liability arising from Walter Huwe's injury. Given that "[a]ny doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor," *Id.* at 300-01, these facts are sufficient to trigger Zurich's duty to defend.

Because Zurich has failed to provide any evidence that the defense costs are unreasonable or unnecessary and its duty to defend was triggered at the time of tender, Polar-Mohr is entitled to summary judgment as to its sixth cause of action. It is also entitled to summary judgment as to its fifth cause of action as to Section 2860 given Zurich's concession.

## III. PAYMENT OF JUDGMENT

Polar-Mohr contends that Zurich owes 7% prejudgment interest on all amounts paid and that it is entitled to be paid in Euros as opposed to U.S. dollars. Zurich argues that the amount sought raises issues of fact that cannot be resolved by summary judgment because (1) the trigger date of Zurich's defense obligation may be April 2016 and (2) Polar-Mohr has not provided an accurate translation of the invoices that contain German in order to evaluate the reasonableness and necessity of those fees. Each of these arguments fails as discussed above. Zurich's defense obligation was triggered at the time of tender, and Zurich has presented no evidence to rebut the presumption of reasonableness and necessity. Accordingly, the amounts paid by Polar-Mohr for defense and settlement costs are known amounts and are entitled to prejudgment interest.

In California, for contracts entered prior to January 1, 1986, the prejudgment interest rate is 7%. Cal. Const. Art. 15, § 1; *Wolf v. Walt Disney Pictures and Television*, 162 Cal. App. 4th 1107, 1131-32 (2008). Polar-Mohr is entitled to prejudgment interest for settlement and defense

9

costs from the date paid.

As for Polar-Mohr's request to be paid in Euros, Zurich argues that given that the Euro was introduced on January 1, 1999, after the expiration of the policy, it is not foreseeable that payment would need to be paid in Euros and consequently Zurich should not be required to pay in Euros. Zurich also contends that it is not necessary to reimburse Polar-Mohr in Euros given that the attorneys' rates in U.S. dollars can easily be applied. Further, Zurich points out that the invoices for the attorneys based in the United States show billing rates in U.S. dollars.

This is another silly argument, and Zurich is wrong to boot. "A court applying California law should enter a judgment on a . . . claim expressed in a foreign currency in that foreign currency." *Williamette Green Innov. Ctr., LLC v. Quartis Capital Partners*, No. 13–cv–00848–JCS, 2014 WL 5281039 at *14-15 (N.D. Cal. January 21, 2014). The invoices upon which all of Polar-Mohr's claims are based were invoiced and paid in Euros. Any reimbursement of these invoices should also be paid in Euros. That the bills can be calculated in U.S. dollars is irrelevant; I must consider in what currency the loss was suffered. The amount of the debt is the same whether expressed in dollars or Euros.

## CONCLUSION

For the reasons discussed above, I GRANT Polar-Mohr's motion for summary judgment and DENY Zurich's motion. As to Polar-Mohr's breach of contract claim, judgment shall be entered for the sum of 2,246,185.82 Euros (US $2,515,000.65) to be paid in Euros. The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

Dated: March 15, 2018

William H. Orrick
United States District Judge

10